IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Baltimore Division)

| | | |
|---|---|---|
| In re: | * | |
| PJCOMN ACQUISITION CORPORATION | * | Case No: 11-29380-RAG |
| | | (Chapter 11) |
| Debtor | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

DEBTOR'S MOTION FOR APPROVAL OF SETTLEMENT AND
COMPROMISE BETWEEN DEBTOR AND PARTIES IN INTEREST

PJCOMN Acquisition Corporation, debtor and debtor in possession ("PJCOMN" or "Debtor"), by counsel, pursuant to § 105(a) of the United States Bankruptcy Code (the "Code") and Rule 9019(a) of the Federal Rules of Bankruptcy Procedure, files this Motion for Approval of Settlement and Compromise between Debtor and Essential Pizza, Inc. ("Essential Pizza"), H. Clifford Harris, IV ("Harris"), Brian Mills ("Mills"), Papa John's International, Inc., (individually and together with its affiliates and subsidiaries, including, but not limited to, Capital Delivery, Ltd., PJ Food Service, Inc., Papa Card, Inc., Papa John's National Marketing Fund, Inc., Papa John's USA, Inc., and Preferred Marketing Solutions, Inc., "PJI"), GECPAC Investment, Inc. ("GECPAC") by and through its servicer, GE Capital Corporation ("GECC"), the duly-appointed committee of unsecured creditors in the Bankruptcy Case (the "Committee"), and the State of Colorado Department of Revenue ("CDOR") (Essential Pizza, Harris, Mills, PJI, GECPAC, the Committee, and CDOR are sometimes hereinafter referred to individually and collectively as the "Settlement Parties"), and in support thereof, states as follows:

Jurisdiction, Venue, and Statutory Predicate

1. The Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1334, and this is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O).

2. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory predicates for the relief requested herein are § 105(a) of the Bankruptcy Code and Rule 9019(a) of the Bankruptcy Rules.

Parties and Background

4.      The Debtor is a Delaware corporation with business operations in Colorado and Minnesota and its back office functions administered in Maryland. The Debtor owns and operates seventy-two (72) Papa John's franchises.  On September 27, 2011 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Maryland (the "Court").  The Debtor continues to manage and operate its business and affairs as a debtor in possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code.

5.      Essential Pizza is a Delaware corporation and parent company of the Debtor.  Essential Pizza is owned by Clifford Harris and Brian Mills.

6.      PJI is a Delaware corporation that owns and controls the chain of Papa John's restaurants.  PJI grants franchises and licensing rights to marks owned by PJI and provides various goods and services relating to the operations and finances of Papa John's restaurants and the franchisees that operate them.

7.      GECPAC is a Delaware Corporation and the Debtor's secured lender.

8.      CDOR is the legal entity responsible for collecting sales and withholding taxes owed by businesses to the State of Colorado resulting from generating retail sales and employing personnel, respectively, in the State of Colorado.

9.      The Committee is the duly appointed official committee of unsecured creditors in the Bankruptcy Case.

10.     On or about September 2005, Blackstreet Capital Management LLC, a Delaware limited liability company and private equity fund ("Blackstreet"), formed PJCOMN, LLC, a Delaware limited liability company ("PJCOMN LLC") as one of its portfolio companies. PJCOMN LLC, Armistead Burwell, an individual ("Burwell"), and Angel Donchev, an individual ("Donchev" and together with PJCOMN LLC and Burwell, the "Blackstreet Parties"), subsequently formed the Debtor, which, in turn, purchased certain Papa John's franchise locations in Minnesota and Colorado from PJI.   On or about September 28, 2007, the Blackstreet Parties, as sellers, and Essential Pizza, as buyer, entered into that certain Stock

Purchase Agreement dated as of September 28 2007 (the "Stock Purchase Agreement") pursuant to which Essential Pizza acquired 100% of the stock of the Debtor from the Blackstreet Parties (the "Acquisition").

11. In order to finance the Acquisition, the Debtor entered into certain financing arrangements, including without limitation, the following:

a. <u>The GECC Loan</u>. The Debtor and GECC, entered into a Loan and Security Agreement, dated September 28, 2007 (the "Loan Agreement"), pursuant to which the Debtor borrowed the sum of $8,960,000.00 from GECC to finance the Acquisition (the "Loan"). The Debtor delivered a promissory note, dated September 28, 2007, to GECC in the original principal amount of $8,960,000.00 (the "Note") to evidence its indebtedness to GECC for the Loan. To secure the payment and performance of all obligations owing to GECC, through the Loan Agreement, the Debtor granted to GECC a first priority security interest in and lien on its assets (the "Liens"). Essential Pizza, Harris, and Mills executed a guaranty, dated September 28, 2007, (the "Guaranty") in favor of GECC guarantying, among other things, repayment of the Loan. On December 31, 2008, GECC assigned all rights, title, and interest in the Loan and Security Agreement, the Note and all ancillary instruments, agreements and documents to GECPAC. On February 24, 2011, GECPAC and PJCOMN entered into a Loan Modification Agreement (the "Loan Modification Agreement"), modifying certain terms of the Loan. The Loan Agreement, the Note, the Guaranty, the Loan Modification Agreement, and all agreements, instruments, guaranties, or other documents of any kind issued, executed and/or delivered in connection with the Loan, together with all amendments, modifications, renewals, novations or extensions thereof, are herein collectively referred to as the "Loan Documents." As of December 31, 2011, the aggregate amount due and outstanding under the Loan Documents is no less than $7,747,002.02, inclusive of principal, interest, and late fees (but excluding default interest and attorneys' fees and costs).

b. <u>The Blackstreet Loan.</u> On or about September 28, 2007, Essential Pizza entered into a seller take-back financing (the "Blackstreet Loan") evidenced by (i) that certain First Promissory Note in the original principal amount of $1,000,000.00 and (ii) that

certain Second Promissory Note in the original principal amount of $1,200,000.00, each payable to PJCOMN LLC.  Harris and Mills guaranteed the Blackstreet Loan pursuant to that certain Guaranty, of even date therewith.

12. Subsequent to the Acquisition, the Debtor, Essential Pizza, Harris, and Mills were named as defendants in the following class action litigations, all relating to various alleged federal and wage law infractions:

- *Bass v. PJCOMN Acquisition Corp., et al.*, Case No. 1:09-CV-01614-REB-MEH, pending in the United States District Court for the District of Colorado (the "Colorado Entity Class Action Case");

- *Sundine v. Harris, et al.,* Case No. 11:11-CV-01204-WJM-CBS, pending in the United States District Court for the District of Colorado (the "Colorado Individuals Class Action Case"); and

- *Rader v. PJCOMN Acquisition Corp.*, Case No. 0:10-CV-04119-MJD-JJG, pending in the United States District Court for the District of Minnesota (the "Minnesota Class Action Case")

(collectively, the "Class Actions").  The defendants in the Class Actions deny liability.

13. Subsequent to the Acquisition, disputes arose between the Debtor and PJI relating to, among other things, the Acquisition.  In July, 2011, the Debtor and Essential Pizza commenced an action against PJI and Risk Services Corp., PJ Food Service, Inc., PJCOMN LLC, Blackstreet, Burwell and Donchev seeking damages for various causes of action arising from or relating to the Acquisition, styled as *PJCOMN Acquisition Corp., et al. v. Papa John's International, Inc., et al.*, Case No. 11CI04852, District Court for the Fourth Judicial District, State of Minnesota, County of Hennepin (the "PJCOMN Minnesota Lawsuit").  Blackstreet, Burwell and Donchev have subsequently been dismissed without prejudice from the PJCOMN Minnesota Lawsuit.  The remaining defendants in the PJCOMN Minnesota Lawsuit deny liability.

14. In August, 2011, PJI and its affiliates PJ Food Service, Inc. and Risk Services Corp. commenced an action against the Debtor and Essential Pizza seeking to litigate in Kentucky all disputes among the parties, including those raised or that could have been raised in

the PJCOMN Minnesota Lawsuit and to arbitrate all disputes among the parties pursuant to mandatory arbitration provisions in the franchise agreements to which PJCOMN and PJI are parties. Such lawsuit is styled as, *Papa John's International, Inc., et al. v. PJCOMN Acquisition Corp., et al.*, Case No. 11CI04852, Circuit Court for Jefferson County, Kentucky (the "PJI Kentucky Lawsuit"). Since the Petition Date, the court presiding over the PJI Kentucky Lawsuit ruled in PJI's favor and required that disputes between PJI and PJCOMN be submitted for arbitration (the "Arbitration"). The Arbitration has not yet commenced.

15. Prior to the Petition Date, PJI affiliate Capital Delivery, Ltd. commenced an action against the Debtor, Essential Pizza, Harris, and Mills seeking to collect damages in the amount of approximately $1,441,882.00, inclusive of principal and interest through July 15, 2011, styled as *Capital Delivery, Ltd. v. PJCOMN Acquisition Corp., et al.*, Case No. 3:11-CV-00440-JGH, United States District Court for the Western District of Kentucky (Louisville) (the "Capital Delivery Lawsuit"). The defendants in the Capital Delivery Lawsuit deny liability.

16. Prior to the commencement of the Bankruptcy Case, GECPAC declared the Loan to be in default and commenced an action against the Debtor, Essential Pizza, Harris, and Mills for monies due and outstanding under the Loan Documents and sought appointment of a receiver for the Debtor in the Circuit Court for Baltimore County, Maryland, styled as *GECPAC Investment I, Inc. v. PJCOMN Acquisition Corp., et al.* Case No. 03-C-11-009322 (the "Receivership Lawsuit"). The Circuit Court entered an order appointing a receiver on September 26, 2011. After the Petition Date, GECPAC dismissed without prejudice all defendants from the Receivership Lawsuit other than the Debtor.

17. Subsequent to the Petition Date, GECPAC commenced an action against Essential Pizza, Harris, and Mills seeking to recover damages for their liability under the Loan Documents, including the related Guaranty, styled as *GECPAC Investment I, Inc. v. Essential Pizza, Inc., et al.* Case No. CV 2011-017968, Superior Court of the State of Arizona for the County of Maricopa (the "Arizona Lawsuit"). The time for defendants to answer the Arizona

Lawsuit or otherwise seek dismissal thereof has been extended by the parties to February 29, 2012.

18. The PJCOMN Minnesota Lawsuit, the PJI Kentucky Lawsuit, the Arbitration, the Capital Delivery Lawsuit, the Receivership Lawsuit, and the Arizona Lawsuit are collectively referred to hereafter as the "Litigation".

19. Since the Petition Date, the Debtor, GECPAC, PJI and the Committee have engaged in good faith, arms'-length negotiations with the goal of achieving a consensual resolution of this bankruptcy case, the Litigation, and the Class Actions. As a result of these efforts, the parties have reached a settlement evidenced, in its most recent form, by a Settlement Agreement, an unexecuted copy of which is **Exhibit 1** hereto and is incorporated herein by reference.

The Settlement Agreement Terms

20. <u>Capital Insight Retention Motion</u>. After conferring with GECPAC, PJI and the Committee, the Debtor has filed a motion in this bankruptcy case seeking authority to employ Capital Insight, LLC ("Capital Insight") as broker and/or investment banker (the "Retention Motion") to market substantially all of the Debtor's assets for sale pursuant to § 363 of the Bankruptcy Code (the "Sale") so as to permit the Court to consider granting the Retention Motion without a hearing upon expiration of the notice period or a soon thereafter as is practicable..

21. <u>Bid Procedures</u>. After conferring with GECPAC, PJI and the Committee, the Debtor shall file a motion in the Bankruptcy Case seeking approval of bid procedures (the "Bid Procedures") in connection with the Sale (the "Bid Procedures Motion"). The Bid Procedures and the Bid Procedures Motion shall be in a form reasonably acceptable to GECPAC, the Committee, and PJI prior to submission to the Court. The Bid Procedures Motion shall be filed in a manner so as to permit the Court to consider entering an order approving the Bid Procedures at the hearing scheduled to occur in this bankruptcy case on February 17, 2012.

22. <u>Sale Motion</u>. After conferring with GECPAC, PJI and the Committee, PJCOMN shall file a motion in the Bankruptcy Case, which motion may, but need not be, filed

contemporaneously with or as part of the Bid Procedures Motion, seeking approval of the Sale (the "Sale Motion"). The Sale Motion and any order approving the Sale shall be in a form reasonably acceptable to GECPAC, PJI and the Committee. The Sale Motion shall be filed in a manner so as to permit the Court to consider entering an order approving the Sale at the hearing scheduled to occur in the Bankruptcy Case on March 9, 2012 or such later date as the Court may order.

23. <u>GECPAC Allowed Claim</u>.  The Debtor, Harris, Mills, Essential Pizza, PJI, CDOR, and the Committee agree that as of December 31, 2011, GECPAC shall have an allowed, secured claim in this bankruptcy case pursuant to §§ 502 and 506 of the Bankruptcy Code in the amount of $ 7,747,002.02, exclusive of default interest and attorneys' fees and costs (the "GECPAC Allowed Claim"); and (b) acknowledge, stipulate, and agree that all obligations under the Loan Documents, including the GECPAC Allowed Claim and the Liens, subject only to the claims and liens of CDOR to the extent entitled to priority ahead of GECPAC under Colorado law, are (i) valid, binding, and in full force and effect; (ii) properly perfected and senior to any and all other security interests in, liens upon, and claims against the assets of the Debtor; and (iii) not subject to any claims, counterclaims, setoff, disallowance, subordination, avoidance, recharacterization, or defenses. At the closing of the Sale, GECPAC shall irrevocably receive on account of the GECPAC Allowed Claim the Debtor's cash on hand, if any, plus the "Net Sale Proceeds." "Net Sale Proceeds" shall mean the cash purchase price paid to the Debtor in connection with the Sale, less (i) Capital Insight's Court-approved fees and expenses; (ii) the Committee Counsel Carve-Out Amount (defined below); (iii) the Protiviti Carve-Out Amount (to the extent not previously paid); (iv) an amount equal to the allowed CDOR Claim (to the extent not previously paid and excluding the Penalty Claim (defined below)); (v) the Unsecured Creditor Carve-Out (defined below); (vi) the Litigation Settlement Fund Amount (defined below); (vii) the PJI 503(b)(9) Claim; and (viii) the approved fees of the Debtor's approved professionals as provided below.

24. <u>Cash Collateral Usage</u>.  Subject to the occurrence of the Release Effective Date, GECPAC shall consent to the use of its cash collateral to fund the following, which, unless

otherwise stated below, shall be funded first from Debtor's cash on hand and second from gross proceeds of the Sale:

  i. Subject to the Class Actions being dismissed with prejudice, to permit the Debtor to pay up to $300,000.00 (the "Class Action Settlement Amount") to fully and finally settle the Class Actions as to all parties thereto (the Debtor has represented to GECPAC, the Committee, and PJI that it has reached a settlement agreement with the parties to the Class Actions for the Class Action Settlement Amount);

  ii. Subject to Blackstreet releasing any and all claims it may have against the Debtor, its affiliates, and principals, to permit the Debtor to pay up to $75,000 (the "Blackstreet Settlement Amount," and together with the Class Action Settlement Amount, the "Litigation Settlement Fund Amount") to fully and finally settle claims relating to the Blackstreet Loan as to all obligors thereto;

  iii. To permit the Debtor to pay an amount equal to $350,000.00, plus five and one/half percent (5.5%) of any cash proceeds in excess of $5,500,000.00 received from the Sale, to the holders of all allowed unsecured claims against the Debtor after all such claims have become allowed claims (the "Unsecured Creditor Carve-Out");

  iv. To permit the Debtor to pay PJI the allowed amount of its claim arising from the provision of goods to the Debtor in the twenty (20) day period preceding the Petition Date pursuant to Section 503(b)(9) of the Bankruptcy Code (the "PJI 503(b)(9) Claim");

  v. To permit the Debtor to pay the Court-approved fees and expenses of counsel for the Committee in an amount not to exceed $100,000.00 (the "Committee Counsel Carve-Out Amount"); <u>provided</u> that GECPAC may, in its sole and absolute reasonable discretion, consent to increase the Committee Counsel Carve-Out Amount to an amount not to exceed $150,000.00;

  vi. Subject to the entry of an order approving the final fee application of Protiviti, Inc. ("Protiviti"), to permit the Debtor to pay Protiviti its Court-approved fees and expenses in an amount not to exceed $20,000.00 (the "Protiviti Carve-Out Amount"); and

vii. To permit PJCOMN to pay the budgeted expenses approved in an order entered in this bankruptcy case approving the Debtor's use of cash collateral, including, without limitation, the Court-approved fees and expenses of the Debtor's professionals.

25. Release Effective Date. For purposes of the Settlement Agreement, the term "Release Effective Date" shall mean the date upon which the Debtor has disposed of substantially all of its assets pursuant to one or more sales under § 363 of the Bankruptcy Code and GECPAC has irrevocably received cash on hand, if any, and the Net Sale Proceeds pursuant to section [5] hereof.

26. GECPAC Deficiency Claim. Effective upon the occurrence of the Release Effective Date, GECPAC agrees to subordinate any unsecured portion of the GECPAC Allowed Claim to all other allowed general unsecured claims in the Bankruptcy Case.

27. PJI Allowed Claim. Effective upon the occurrence of the Release Effective Date, the Settlement Parties agree that, in addition to PJI's administrative claims under § 503(b) of the Bankruptcy Code, PJI shall have an allowed unsecured claim in the Bankruptcy Case in the amount of $350,000.00 (the "PJI Allowed Claim") in respect of its non-administrative claims.

28. Chapter 5 Actions. Effective upon the occurrence of the Release Effective Date, and subject to the releases contained in the Settlement Agreement, the Committee shall have exclusive dominion, control over, and standing to pursue all causes of action that the Debtor may have brought against any party in the Bankruptcy Case pursuant to Chapter 5 of the Bankruptcy Code.

29. Releases. The Settlement Parties shall exchange releases as identified and in the manner described in the Settlement Agreement.

30. Dismissal of Actions. No later than fourteen (14) days after the occurrence of the Release Effective Date, all parties shall enter into and file stipulations of dismissal with prejudice of the Litigation and any pending and undisclosed litigation filed, if any, in any jurisdiction by any party to the Settlement Agreement relating to claims that are released by the terms of this Settlement Agreement.

31. <u>CDOR Claims.</u>  The CDOR has filed a Proof of Claim in the Bankruptcy Case claiming that it is owed $643,499.96 by the Debtor for unpaid sales and withholding taxes and related interest and penalties incurred prior to the Petition Date (the "CDOR Claim").  The CDOR Claim is comprised of (i) $407,173.00 in sales and withholding taxes (the "Tax Claim"), (ii) $6,887.74 in interest (the "Interest Claim"), and (iii) $229,439.22 in penalties (the "Penalty Claim").  The CDOR asserts that under Colorado law, its claim has a first lien priority against the Debtor's Colorado-based assets.  The CDOR asserts that under Colorado law, Harris and Mills and potentially other employees and service providers of the Debtor could be held liable personally for payment of the CDOR Claim.  Upon entry of the Third Interim Order Granting PJCOMN Authority to Use Cash Collateral through January 16, 2012 Pursuant to Budget in the Bankruptcy Case [Docket No. 201], the Debtor transferred $50,000 to the CDOR in complete settlement and satisfaction of the Interest Claim and in partial settlement and satisfaction of the Tax Claim.  The CDOR hereby agrees that provided that (i) it is paid regular weekly payments in the amount of $25,000 (the "Weekly Payments"), by the Debtor as authorized by any Court order authorizing the Debtor's use of cash collateral, and, as necessary, by proceeds of the sale of the Debtor's Colorado-based assets such that the Tax Claim and the Interest Claim have been paid in full; and (ii) the Debtor timely files its post-Petition Date sales tax and wage withholding returns with the CDOR and timely pays the taxes associated with such returns, the CDOR shall and does hereby waive and release the Penalty Claim as well as the right to pursue any person or entity who or which the CDOR may assert is a party that may be liable for the CDOR Claim.  In no event shall any Weekly Payment cause the Debtor's cash on hand to be an amount less than $1,000,000 (the "Minimum Balance").  If any Weekly Payment would cause the Debtor's cash on hand to be an amount less than the Minimum Balance, the Weekly Payment for that week shall be reduced by the amount necessary to maintain the Minimum Balance.  Any subsequent Weekly Payment shall be increased by the amount of any such reduction, provided that the Debtor's cash on hand does not fall below the Minimum Balance.

32. <u>Court Approval, Release Effective Date</u>.  In the event (a) the Court does not enter an order approving this Motion on or before February 21, 2012; (b) the Debtor

withdraws the motion to approve the Settlement Agreement because PJI and/or GECPEC has declined to grant the release conferred in Paragraphs 11 (a) or 12(a) of the Settlement Agreement; or (c) the Release Effective Date fails to occur on or before April 30, 2012, any of the Settlement Parties, the Settlement Agreement shall be of no force or effect and the Settlement Parties shall be returned to their respective positions *status quo ante* and without liability arising from or relating to the Settlement Agreement.

Legal Bases for Requested Relief

33. By this Motion, the Debtor seeks entry of an Order approving the Debtor's entry into the Settlement Agreement or a form thereof that may contain minor corrections or clarifications (the "Settlement Agreement"). Rule 9019(a) of the Bankruptcy Rules, which governs the approval of compromises and settlements, provides in pertinent part that: "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Bankruptcy Rule 9019(a).

34. In approving a compromise or settlement, the Bankruptcy Court is required to make an "informed and independent judgment" as to whether the compromise and settlement is fair and equitable based on an:

> educated estimate of the complexity, expense and likely duration of [any] litigation, the possible difficulties of collecting on any judgment which might be obtained, and all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise. Basic to this process, in every instance, of course, is the need to compare the terms of the compromise with the likely rewards of litigation.

*Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424-25 (1968). *See Depo v. Chase Lincoln First Bank, N.A.* (*In re Depo*), 77 B.R. 381, 383 (N.D. N.Y. 1987), *aff'd*, 863 F.2d 45 (2d Cir. 1988); *American Can Co. v. Herpel* (*In re Jackson Brewing Co.*), 624 F.2d 605, 607 (5th Cir. 1980); *Chopin Assoc. v. Smith* (*In re Holywell Corp.*), 93 B.R. 291, 294 (Bankr. S.D. Fla. 1988); *In re Arrow Air, Inc.*, 85 B.R. 886, 891 (Bankr. S.D. Fla. 1988); *In re Bell & Beckwith*, 77 B.R. 606, 611 (Bankr. N.D. Ohio 1987), *aff'd*, 87 B.R. 472 (N.D. Ohio 1987); *Cf. Magill v. Springfield Marine Bank* (*In re Heissinger Resources, Ltd.*), 67 B.R. 378, 383 (C.D. Ill. 1986) ("the law favors compromise").

35. In making its determination, the Court should consider whether the proposed compromise is in the "best interest of the estate." *Depo*, 77 B.R. at 383. As stated in *Arrow Air*, the "approval of [a] proposed compromise and settlement is a matter of this Court's sound discretion." *Arrow Air*, 85 B.R. at 891. In passing upon a proposed settlement, "the bankruptcy court does not substitute its judgment for that of the Trustee [or debtor in possession]." *Depo*, 77 B.R. at 384 (citations omitted). Nor is the bankruptcy court "to decide the numerous questions of law and fact raised by [objectors] but rather to canvass the issues and see whether the settlement fall[s] below the lowest point in the range of reasonableness." *Cosoff v. Rodman* (*In re W.T. Grant Co.*), 699 F.2d 599, 608 (2d Cir. 1983), *cert denied*, 464 U.S. 822 (1983) (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972), *cert denied*, 409 U.S. 1039 (1972)). *See Holywell*, 93 B.R. at 294 ("In order to exercise this discretion properly, the Court must consider all the relevant facts and evaluate whether the compromise suggested falls below the 'lowest point in the range of reasonableness'") (quoting *In re Teltronics Services, Inc.*, 762 F.2d 185, 189 (2d Cir. 1985)). In passing upon the reasonableness of a proposed compromise, the Court "may give weight to the opinions of the Trustee [or debtor in possession], the parties and their counsel." *Bell & Beckwith*, 77 B.R. at 512.

36. The factors to be considered by the Court in determining whether to approve a compromise or settlement include:

> (i) probability of success in the litigation, with due consideration for the uncertainty in fact and law;
>
> (ii) the complexity and likely duration of the litigation and any attendant expense, inconvenience and delay; and
>
> (iii) all other factors bearing on the wisdom of the compromise.

*Arrow Air*, 85 B.R. at 891 (*citing TMT Trailer Ferry*, 390 U.S. at 424-25). *See Jackson Brewing Co.*, 624 F.2d at 507; *Holywell Corp.*, 93 B.R. at 294-95 (citations omitted).

<u>The Settlement Agreement Is in the Best Interests of All Parties in Interest</u>

37. The Debtor submits that given the expense and diversion of management attention that would be required to pursue the Litigation and a reorganization that would likely be opposed at every turn by PJI and GECPAC, the significant litigation risk, the certainty of

outcome in the Litigation and the Class Actions and the CDOR Claim resulting from the proposed settlement, and the certainty of a distribution to holders of allowed unsecured claims when such an outcome may not otherwise be achievable, the Settlement Agreement contains terms that are fair and equitable. Accordingly, the Debtor submits that entry into the Settlement Agreement is in the exercise of its best business judgment, in the best interests of the Debtor and its creditors.

Notice

38. Notice of this Motion has been provided to all of the Debtor's creditors, the Official Committee of Unsecured Creditors, the Office of the United States Trustee, and all parties who have requested notices in this bankruptcy case. The Debtor submits that the foregoing constitutes good and sufficient notice, and that no other or further notice need be given.

39. The Debtor further submits that the relevant legal authorities are set forth herein and that no novel issues of law have been raised and, therefore, that it will not file additional memoranda as permitted under Local Bankruptcy Rule 9013-2.

WHEREFORE, the Debtor respectfully requests entry of an Order:

A. Authorizing the Debtor to enter into the Settlement Agreement; and

B. Granting such other and further relief as this Court deems just and proper.

       /s/ Lawrence J. Yumkas
Lawrence J. Yumkas, 06357
Logan, Yumkas, Vidmar & Sweeney, LLC
2530 Riva Road, Suite 400
Annapolis, Maryland 21401
(443) 569-0758
lyumkas@loganyumkas.com

Attorneys for Debtor

CERTIFICATE OF SERVICE

I hereby certify that on this 23rd day of January 2012, notice of filing of the Debtor's Motion for Approval of Settlement and Compromise between Debtor and Parties in Interest (the "Motion") was sent electronically to those parties listed on the docket as being entitled to such electronic notice.

        /s/ Lawrence J. Yumkas
Lawrence J. Yumkas