# EXHIBIT 1

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Baltimore Division)

| | | |
|---|---|---|
| In re: | * | |
| PJCOMN ACQUISITION CORPORATION | * | Case No: 11-29380-RAG |
| Debtor | * | (Chapter 11) |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

SETTLEMENT AGREEMENT

This Settlement Agreement (the "Settlement Agreement") is made this _____ day of January 2012, by and among PJCOMN Acquisition Corporation, Debtor and Debtor-in-Possession (the "Debtor"), Essential Pizza, Inc. ("Essential Pizza"), H. Clifford Harris, IV ("Harris"), Brian Mills ("Mills"), Papa John's International, Inc., (individually and together with its affiliates and subsidiaries, including, but not limited to Capital Delivery, Ltd., PJ Food Service, Inc., Papa Card, Inc., Papa John's National Marketing Fund, Inc., Papa John's USA, Inc., and Preferred Marketing Solutions, Inc., "PJI"), GECPAC Investment I, Inc. ("GECPAC"), by and through its servicer, General Electric Capital Corporation ("GECC"), the duly appointed official committee of unsecured creditors (the "Committee") in the above-captioned bankruptcy case (the "Bankruptcy Case"), and the State of Colorado Department of Revenue (the "CDOR"). The Debtor, Essential Pizza, Harris, Mills, PJI, GECPAC, the Committee, and the CDOR are sometimes hereinafter referred to individually and collectively as the "Settlement Parties."

R E C I T A L S

A.    Parties.

1.    The Debtor is a Delaware corporation with places of business in Colorado and Minnesota and its back office functions administered in Maryland.  The Debtor owns and operates seventy-two (72) Papa John's franchises.  On September 27, 2011 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of

Maryland (the "Court"). The Debtor continues to manage and operate its business and affairs as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2.      Essential Pizza is a Delaware corporation owned by Harris and Mills. Its sole asset is the issued and outstanding shares of the Debtor.

3.      Harris is an individual residing in Maryland.

4.      Mills is an individual residing in Colorado.

5.      PJI is a Delaware corporation that owns and controls the chain of Papa John's restaurants. PJI grants franchises and licensing rights to marks owned by PJI and provides various goods and services relating to the operations and finances of Papa John's restaurants and the franchisees that operate them.

6.      GECPAC is a Delaware Corporation and the Debtor's secured lender.

7.      The CDOR is the legal entity responsible for collecting sales and withholding taxes owed by businesses to the State of Colorado resulting from generating retail sales and employing personnel, respectively, in the State of Colorado.

8.      The Committee is the duly appointed official committee of unsecured creditors in the Bankruptcy Case.

B.      Background to the PJCOMN Acquisition

1.      On or about September 2005, Blackstreet Capital Management LLC, a Delaware limited liability company and private equity fund ("Blackstreet"), formed PJCOMN, LLC, a Delaware limited liability company ("PJCOMN LLC") as one of its portfolio companies. PJCOMN LLC, Armistead Burwell, an individual ("Burwell"), and Angel Donchev, an individual ("Donchev" and together with PJCOMN LLC and Burwell, the "Blackstreet Parties"), subsequently formed the Debtor, which, in turn, purchased certain Papa John's franchise locations in Minnesota and Colorado from PJI. On or about September 28, 2007, the Blackstreet Parties, as sellers, and Essential Pizza, as buyer, entered into that certain Stock Purchase Agreement dated as of September 28 2007 (the "Stock Purchase Agreement") pursuant

to which Essential Pizza acquired 100% of the stock of the Debtor from the Blackstreet Parties (the "Acquisition").

   C. <u>Financing the Acquisition</u>

     1. In order to finance the Acquisition, the Debtor entered into certain financing arrangements, including without limitation, the following:

      b. <u>The GECC Loan</u>.  The Debtor and GECC, entered into a Loan and Security Agreement, dated September 28, 2007 (the "Loan Agreement"), pursuant to which the Debtor borrowed the sum of $8,960,000.00 from GECC to finance the Acquisition (the "Loan"). The Debtor delivered a promissory note, dated September 28, 2007, to GECC in the original principal amount of $8,960,000.00 (the "Note") to evidence its indebtedness to GECC for the Loan.  To secure the payment and performance of all obligations owing to GECC, through the Loan Agreement, the Debtor granted to GECC a first priority security interest in and lien on its assets (the "Liens").  Essential Pizza, Harris, and Mills executed a guaranty, dated September 28, 2007 (the "Guaranty"), in favor of GECC guarantying, among other things, repayment of the Loan.  On December 31, 2008, GECC assigned all rights, title, and interest in the Loan and Security Agreement, the Note and all ancillary instruments, agreements and documents to GECPAC.  On February 24, 2011, GECPAC and PJCOMN entered into a Loan Modification Agreement (the "Loan Modification Agreement"), modifying certain terms of the Loan.  The Loan Agreement, the Note, the Guaranty, the Loan Modification Agreement, and all agreements, instruments, guaranties, or other documents of any kind issued, executed and/or delivered in connection with the Loan, together with all amendments, modifications, renewals, novations or extensions thereof, are herein collectively referred to as the "Loan Documents."  As of December 31, 2011, the aggregate amount due and outstanding under the Loan Documents is no less than Seven Million Seven Hundred Forty-Seven Thousand Two and 02/100 Dollars ($7,747,002.02),

inclusive of principal, interest, and late fees (but excluding default interest and attorneys' fees and costs).

        c.    <u>The Blackstreet Loan</u>.  On or about September 28, 2007, Essential Pizza entered into a seller take-back financing transaction (the "Blackstreet Loan") evidenced by (i) that certain First Promissory Note in the original principal amount of One Million Dollars ($1,000,000.00) and (ii) that certain Second Promissory Note in the original principal amount of One Million Two Hundred Thousand Dollars ($1,200,000.00), each payable to PJCOMN LLC. Harris and Mills guaranteed the Blackstreet Loan pursuant to that certain Guaranty, of even date therewith.

        D.    <u>Disputes and Litigation</u>

        1.    Subsequent to the Acquisition, the Debtor, Essential Pizza, Harris, and Mills were named as defendants in the following class action litigations, all relating to various alleged federal and wage law infractions:

- *Bass v. PJCOMN Acquisition Corp., et al.*, Case No. 1:09-cv-01614-REB-MEH, pending in the United States District Court for the District of Colorado (the "Colorado Entity Class Action Case");

- *Sundine v. Harris, et al.,* Case No. 11:11-cv-01204-WJM-CBS, pending in the United States District Court for the District of Colorado (the "Colorado Individuals Class Action Case"); and

- *Rader v. PJCOMN Acquisition Corp.*, Case No. 0:10-cv-04119-MJD-JJG, pending in the United States District Court for the District of Minnesota (the "Minnesota Class Action Case")

(collectively, the "Class Actions").  The defendants in the Class Actions deny liability.

2.      Subsequent to the Acquisition, disputes arose between the Debtor and PJI relating to, among other things, the Acquisition.  In July, 2011, the Debtor and Essential Pizza commenced an action against PJI and Risk Services Corp., PJ Food Service, Inc., PJCOMN LLC, Blackstreet, Burwell and Donchev seeking damages for various causes of action arising from or relating to the Acquisition, styled as *PJCOMN Acquisition Corp., et al. v. Papa John's International, Inc., et al.*, Case No. 11CI04852, District Court for the Fourth Judicial District, State of Minnesota, County of Hennepin (the "PJCOMN Minnesota Lawsuit").  Blackstreet, Burwell and Donchev have subsequently been dismissed without prejudice from the PJCOMN Minnesota Lawsuit.  The remaining defendants in the PJCOMN Minnesota Lawsuit deny liability.

3.      In August, 2011, PJI and its affiliates PJ Food Service, Inc. and Risk Services Corp.  commenced an action against the Debtor and Essential Pizza seeking to litigate in Kentucky all disputes among the parties, including those raised or that could have been raised in the PJCOMN Minnesota Lawsuit and to arbitrate all disputes among the parties pursuant to mandatory arbitration provisions in the franchise agreements to which PJCOMN and PJI are parties.  Such lawsuit is styled as, *Papa John's International, Inc., et al. v. PJCOMN Acquisition Corp., et al.*, Case No. 11CI, 04852, Circuit Court for Jefferson County, Kentucky (the "PJI Kentucky Lawsuit").  Since the Petition Date, the court presiding over the PJI Kentucky Lawsuit ruled in PJI's favor and required that disputes between PJI and PJCOMN be submitted for arbitration (the "Arbitration").  The Arbitration has not yet commenced.

4.      Prior to the Petition Date, PJI affiliate Capital Delivery, Ltd. commenced an action against the Debtor, Essential Pizza, Harris, and Mills seeking to collect damages in the amount of approximately One Million, Four Hundred Forty-One Thousand, Eight Hundred Eighty-Two Dollars ($1,441,882.00), inclusive of principal and interest through July 15, 2011,

styled as *Capital Delivery, Ltd. v. PJCOMN Acquisition Corp., et al.*, Case No. 3:11-cv-00440-JGH, United States District Court for the Western District of Kentucky (Louisville) (the "Capital Delivery Lawsuit"). The defendants in the Capital Delivery Lawsuit deny liability.

5.     Prior to the commencement of the Bankruptcy Case, GECPAC declared the Loan to be in default and commenced an action against the Debtor, Essential Pizza, Harris, and Mills for monies due and outstanding under the Loan Documents and sought appointment of a receiver for the Debtor in the Circuit Court for Baltimore County, Maryland, styled as, *GECPAC Investment I, Inc. v. PJCOMN Acquisition Corp., et al.* Case No. 03-C-11-009322 (the "Receivership Lawsuit"). The Circuit Court entered an order appointing a receiver on September 26, 2011. After the Petition Date, GECPAC dismissed without prejudice all defendants from the Receivership Lawsuit other than the Debtor.

6.     Subsequent to the Petition Date, GECPAC commenced an action against Essential Pizza, Harris, and Mills seeking to recover damages for their liability under the Loan Documents, including the related Guaranty, styled as *GECPAC Investment I, Inc. v. Essential Pizza, Inc., et al.* Case No. CV 2011-017968, Superior Court of the State of Arizona for the County of Maricopa (the "Arizona Lawsuit"). The time for defendants to answer the Arizona Lawsuit or otherwise seek dismissal thereof has been extended by the parties to February 29, 2012.

7.     The PJCOMN Minnesota Lawsuit, the PJI Kentucky Lawsuit, the Arbitration, the Capital Delivery Lawsuit, the Receivership Lawsuit, and the Arizona Lawsuit are together referred to hereafter as the "Litigation."

E.     The Global Settlement

1.     Since the Petition Date, the Settlement Parties have engaged in good faith, arms' length negotiations with the goal of achieving a consensual resolution of the

Bankruptcy Case, the Litigation, and the Class Actions. As a result of these efforts, the parties have reached this Settlement Agreement, which is subject to Court approval.

NOW, THEREFORE, in consideration of the premises and mutual covenants contained herein, and the mutual obligations set forth below and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, and subject to entry of an Order in the Bankruptcy Case authorizing and approving this Settlement Agreement, IT IS HEREBY AGREED AS FOLLOWS:

1.    Recitals.  The Recitals are incorporated herein by reference.

2.    Capital Insight Retention Motion.  The Debtor shall continue to prosecute its motion filed on January 8, 2012 seeking authority to employ Capital Insight, LLC ("Capital Insight") as broker and/or investment banker [Docket No. 216] (the "Retention Motion") to market substantially all of the Debtor's assets for sale pursuant to section 363 of the Bankruptcy Code (the "Sale") so as to permit the Court to consider entering an order granting the Retention Motion as expeditiously as possible.

3.    Bid Procedures.  After conferring with GECPAC, PJI and the Committee, the Debtor shall file a motion in the Bankruptcy Case seeking approval of bid procedures (the "Bid Procedures") in connection with the Sale  (the "Bid Procedures Motion").  The Bid Procedures and the Bid Procedures Motion shall be in a form acceptable to GECPAC, the Committee, and PJI prior to their submission to the Court.  The Bid Procedures Motion shall be filed in a manner so as to permit the Court to consider entering an order approving the Bid Procedures at or before the hearing scheduled to occur in the Bankruptcy Case on February 17, 2012.

4.    Sale Motion.  After conferring with GECPAC, PJI and the Committee, PJCOMN shall file a motion in the Bankruptcy Case, which motion shall be filed contemporaneously with or as part of the Bid Procedures Motion, seeking approval of the Sale (the "Sale Motion").  The

Sale Motion and any order approving the Sale shall be in a form acceptable to the Debtor, GECPAC, PJI, and the Committee. The Sale Motion shall be filed in a manner so as to permit the Court to consider entering an order approving the Sale at the hearing scheduled to occur in the Bankruptcy Case on March 9, 2012 or such later date as the Court may order.

5. <u>GECPAC Allowed Claim</u>. The Debtor, Harris, Mills, Essential Pizza, PJI, the CDOR, and the Committee hereby (a) agree that as of December 31, 2011, GECPAC shall have an allowed, secured claim in the Bankruptcy Case pursuant to sections 502 and 506 of the Bankruptcy Code in an amount no less than $7,747,002.02, exclusive of default interest, costs, and attorneys' fees (the "GECPAC Allowed Claim"); and (b) acknowledge, stipulate, and agree that all obligations under the Loan Documents, including the GECPAC Allowed Claim, and the Liens, subject only to the claims and liens of the CDOR to the extent entitled to priority ahead of GECPAC under Colorado law (the "CDOR Secured Claims"), are (i) valid, binding, and in full force and effect; (ii) properly perfected and senior to any and all other security interests in, liens upon, and claims against the assets of the Debtor; and (iii) not subject to any claims, counterclaims, setoff, disallowance, subordination, avoidance, recharacterization, or defenses. At the closing of the Sale, GECPAC shall irrevocably receive on account of the GECPAC Allowed Claim the Debtor's cash on hand, plus the "Net Sale Proceeds." "Net Sale Proceeds" shall mean the cash purchase price paid to the Debtor in connection with the Sale, less (i) Capital Insight's Court-approved fees and expenses; (ii) the Committee Counsel Carve-Out Amount (defined below); (iii) the Protiviti Carve-Out Amount (to the extent not previously paid); (iv) an amount equal to the allowed CDOR Secured Claims (to the extent not previously paid and excluding the Penalty Claim (defined below)); (v) the Unsecured Creditor Carve-Out (defined below); (vi) the Litigation Settlement Fund Amount (defined below); and (vii) the PJI 503(b)(9) Claim.

6.    <u>Cash Collateral Usage</u>.  Subject to the occurrence of the Release Effective Date (as defined below), GECPAC hereby consents to the use of its cash collateral to fund the following, which, unless otherwise stated below, shall be funded first from Debtor's available cash and second from proceeds of the Sale:

i.    Subject to the Class Actions being dismissed with prejudice, to permit the Debtor to pay up to Three Hundred Thousand Dollars ($300,000.00) (the "Class Action Settlement Amount") to fully and finally settle the Class Actions as to all parties thereto (the Debtor has represented to GECPAC, the Committee, and PJI that it has reached a settlement agreement with the parties to the Class Actions for the Class Action Settlement Amount);

ii.    Subject to Blackstreet releasing any and all claims it may have against the Debtor, its affiliates, and principals, to permit the Debtor to pay up to Seventy-Five Thousand Dollars ($75,000.00) (the "Blackstreet Settlement Amount," and together with the Class Action Settlement Amount, the "Litigation Settlement Fund Amount") to fully and finally settle the Blackstreet Claim as to all obligors thereto;

iii.    To permit the Debtor to pay an amount equal to Three Hundred Fifty Thousand Dollars ($350,000.00), plus five and one/half percent (5.5%) of any cash proceeds in excess of Five Million Five Hundred Thousand Dollars ($5,500,000.00) received from the Sale, to the holders of all allowed unsecured claims against the Debtor after all such claims have become allowed claims (the "Unsecured Creditor Carve-Out");

iv.    To permit the Debtor to pay PJI the allowed amount of its claim arising from the provision of goods to the Debtor in the twenty-day period preceding the

Petition Date pursuant to Section 503(b)(9) of the Bankruptcy Code (the "PJI 503(b)(9) Claim");

v.    To permit the Debtor to pay the Court-approved fees and expenses of counsel for the Committee in an amount not to exceed One Hundred Thousand Dollars ($100,000) (the "Committee Counsel Carve-Out Amount"); provided that GECPAC may, in its sole and absolute reasonable discretion, consent to increase the Committee Counsel Carve-Out Amount to an amount not to exceed One Hundred Fifty Thousand Dollars ($150,000);

vi.    Subject to the entry of an order approving the final fee application of Protiviti, Inc. ("Protiviti"), to permit the Debtor to pay Protiviti its Court-approved fees and expenses in an amount not to exceed Twenty Thousand Dollars ($20,000.00) (the "Protiviti Carve-Out Amount"); and

vii.    To permit PJCOMN to pay the budgeted expenses approved in an order entered in the bankruptcy case approving the Debtor's use of cash collateral, including, without limitation, the Court-approved fees and expenses of the Debtor's professionals.

7.    Release Effective Date.  For purposes of this Settlement Agreement, the term "Release Effective Date" shall mean the date upon which the Debtor has disposed of substantially all of its assets pursuant to one or more sales under section 363 of the Bankruptcy Code and GECPAC has irrevocably received the Net Sale Proceeds pursuant to section 5 hereof.

8.    GECPAC Deficiency Claim.  Effective upon the occurrence of the Release Effective Date, GECPAC hereby agrees to subordinate any unsecured portion of the GECPAC Allowed Claim to all other allowed general unsecured claims in the Bankruptcy Case.

9.      <u>PJI Allowed Claim</u>.  Effective upon the occurrence of the Release Effective Date, the Settlement Parties hereby agree that, in addition to PJI's administrative claims under Section 503(b) of the Bankruptcy Code, PJI shall have an allowed unsecured claim in the Bankruptcy Case in the amount of Three Hundred Fifty Thousand Dollars ($350,000.00) (the "PJI Allowed Claim") in respect of its non-administrative claims.

10.      <u>Chapter 5 Actions</u>.  Effective upon the occurrence of the Release Effective Date, and subject to the releases contained herein, the Committee shall have exclusive dominion, control over, and standing to pursue all causes of action that the Debtor may have brought against any party in the Bankruptcy Case pursuant to Chapter 5 of the Bankruptcy Code.

11.      <u>PJI Releases</u>.

a.      As of the Release Effective Date, except as specifically provided for herein, PJI and its officers, directors, agents, professionals, servants, affiliates, members, employees, successors, and assigns hereby release and forever discharge Mills, Harris, the Debtor, and the Debtor's officers, directors, agents, professionals, servants, employees, affiliates, predecessors, successors and assigns from all sums of money, accounts, actions, suits, proceedings, claims, liabilities, causes of action and demands whatsoever, known or unknown, past or present which they had, now have or may have against such parties.  Notwithstanding the foregoing, the release and discharge of Mills and Harris in this section 11(a) shall be subject to (i) PJI certifying prior to the Court's consideration of the Debtor's Motion to Approve this Settlement Agreement, in its sole and absolute reasonable discretion that it has received and reviewed Mill's and Harris's personal financial statements (the "Financial Statements") to PJI's satisfaction, and (ii) PJI's receipt of a declaration from Harris pursuant to 28 U.S.C. § 1746 (the "Harris Declaration") that Harris has no equity or other ownership right or interest in iProcess

Online, Inc. ("iProcess").  The Financial Statements and the Harris Declaration shall be sent to PJI so as to be received no later than seven (7) calendar days after the date hereof.

b.    As of the Release Effective Date, and except as specifically provided for herein the Debtor, Mills, Harris, Essential Pizza, the Committee, and their respective officers, directors, agents, professionals, servants, affiliates, members, employees, successors, and assigns hereby unconditionally and irrevocably release and forever discharge PJI and its officers, directors, agents, professionals, servants, employees, affiliates, predecessors, successors and assigns from all sums of money, accounts, actions, suits, proceedings, claims, liabilities, causes of action and demands whatsoever, known or unknown, foreseen or unforeseen, past or present which they had, now have or may have against such parties, including, but not limited to claims made in the Litigation.

12.    <u>GE Releases</u>.

a.    As of the Release Effective Date, and except as specifically provided herein, GECPAC, GECC, and their respective officers, directors, agents, professionals, servants, affiliates, members, employees, successors, and assigns hereby release and forever discharge Mills, Harris, the Debtor, and the Debtor's officers, directors, agents, professionals, servants, employees, affiliates, predecessors, successors and assigns from all sums of money, accounts, actions, suits, proceedings, claims, liabilities, causes of action and demands whatsoever, known or unknown, past or present which they had, now have or may have against such parties relating in any way to the Loan and the Loan Documents and which were or could have been brought as causes of action relating to the Loan Documents in the Receivership Lawsuit and the Arizona Lawsuit.  Notwithstanding the foregoing, the release and discharge of Mills and Harris in this section 12(a) shall be subject to (i) GECPAC certifying prior to the Court's consideration of the Debtor's Motion to Approve this Settlement Agreement, in its sole and absolute reasonable

discretion, that it has received and reviewed the Financial Statements to GECPAC's satisfaction, and (ii) GECPAC's receipt of the Harris Declaration. The Financial Statements and the Harris Declaration shall be sent to GECPAC so as to be received no later than seven (7) calendar days after the date hereof.

b.     Effective upon the Release Effective Date, and except as specifically provided for herein, the Debtor, Mills, Harris, Essential Pizza, the Committee, and their respective officers, directors, agents, professionals, servants, affiliates, members, employees, successors, and assigns (collectively, the "GE Release Parties") hereby unconditionally and irrevocably release and forever discharge GECPAC and GECC and their respective officers, directors, agents, professionals, servants, employees, affiliates, predecessors, successors and assigns from all sums of money, accounts, actions, suits, proceedings, claims, liabilities, causes of action and demands whatsoever, known or unknown, foreseen or unforeseen, past or present which they had, now have or may have against such parties arising from or relating to the Loan Documents or any act or omission relating in any way to any GE Release Party.

13.     Certain Committee Releases. As of the Release Effective Date, except as specifically provided for herein, the Committee and its members, successors, and assigns hereby release and forever discharge Mills and Harris and their respective heirs, successors, and assigns from all sums of money, accounts, actions, suits, proceedings, claims, liabilities, causes of action and demands whatsoever, known or unknown, past or present which they had, now have or may have against such parties.

14.     Dismissal of Actions.  No later than fourteen (14) days after the occurrence of the Release Effective Date, all parties shall enter into and file stipulations of dismissal with prejudice of the PJCOMN Minnesota Lawsuit, PJI Kentucky Lawsuit, the Arbitration, Capital Delivery Lawsuit, the Receivership Lawsuit, the Arizona Lawsuit and any pending and undisclosed

litigation filed in any jurisdiction by any party hereto against any party hereto relating to claims that are released by the terms of this Settlement Agreement. It shall be the responsibility of the Plaintiffs of each such lawsuit to prepare and file such stipulations and while all parties shall be obligated to execute such stipulations, the plaintiffs and their counsel in each such case are hereby granted limited powers of attorney for the express and limited purpose of executing such stipulations on behalf of all defendants and shall be immune from liability for the proper exercise of such this limited power of attorney.

15.    CDOR Claims. The CDOR has filed a Proof of Claim in the Bankruptcy Case claiming that it is owed Six Hundred Forty-Three Thousand, Four Hundred Ninety-Nine and 96/100 Dollars ($643,499.96) by the Debtor for unpaid sales and withholding taxes and related interest and penalties incurred prior to the Petition Date (the "CDOR Claim"). The CDOR Claim is comprised of (i) Four Hundred Seven Thousand One Hundred Seventy-Three Dollars ($407,173.00) in sales and withholding taxes (the "Tax Claim"), (ii) Six Thousand, Eight Hundred Eighty-Seven and 74/100 Dollars ($6,887.74) in interest (the "Interest Claim"), and (iii) Two Hundred Twenty-Nine Thousand, Four Hundred Thirty-Nine and 22/100 Dollars ($229,439.22) in penalties (the "Penalty Claim"). The CDOR asserts that under Colorado law, its claim has a first lien priority against the Debtor's Colorado-based assets. The CDOR asserts that under Colorado law, Harris and Mills and potentially other employees and service providers of the Debtor could be held liable personally for payment of the CDOR Claim. Upon entry of the Third Interim Order Granting PJCOMN Authority to Use Cash Collateral Through January 16, 2012 Pursuant to Budget in the Bankruptcy Case [Docket No. 201], the Debtor transferred Fifty Thousand Dollars ($50,000) to the CDOR in complete settlement and satisfaction of the Interest Claim and in partial settlement and satisfaction of the Tax Claim. The CDOR hereby agrees that provided that (i) it is paid regular weekly payments in the amount of $25,000 (the

"Weekly Payments"), by the Debtor as authorized by any Court order authorizing the Debtor's use of cash collateral, and, as necessary, by proceeds of the sale of the Debtor's Colorado-based assets such that the Tax Claim and the Interest Claim have been paid in full; and (ii) the Debtor timely files its post-Petition Date sales tax and wage withholding returns with the CDOR and timely pays the taxes associated with such returns, the CDOR shall and does hereby waive and release the Penalty Claim as well as the right to pursue any person or entity who or which the CDOR may assert is a party that may be liable for the CDOR Claim.  In no event shall any Weekly Payment cause the Debtor's cash on hand to be an amount less than One Million Dollars ($1,000,000) (the "Minimum Balance").  If any Weekly Payment would cause the Debtor's cash on hand to be an amount less than the Minimum Balance, the Weekly Payment for that week shall be reduced by the amount necessary to maintain the Minimum Balance.  Any subsequent Weekly Payment shall be increased by the amount of any such reduction, provided that the Debtor's cash on hand does not fall below the Minimum Balance.

16.    <u>Court Approval; Release Effective Date</u>.  In the event (a) the Court does not enter an order approving the Debtor's motion to approve the Settlement Agreement on or before February 21, 2012; (b) the Debtor withdraws the motion to approve the Settlement Agreement because PJI and/or GECPAC has declined to grant the release conferred in Paragraph 11 (a) or 12(a) hereof; or (c) the Release Effective Date fails to occur on or before April 30, 2012, any of the Settlement Parties may declare that this Settlement Agreement shall be of no force or effect and the Settlement Parties shall be returned to their respective positions *status quo ante* and without liability arising from or relating to the Settlement Agreement

17.    <u>Entire Agreement; Amendment, Modification, and Waiver</u>.  This Settlement Agreement constitutes the entire agreement among the Settlement Parties with respect to the subject matter hereof, and no amendment or modification to, or waiver of, any term of this

Settlement Agreement shall be effective unless in writing and signed by the party against whom such amendment, modification, or waiver may be enforced.

18.    <u>Severability</u>.    If any provision or part of any provision of this Settlement Agreement shall for any reason be held invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision of this Settlement Agreement and this Settlement Agreement shall be construed as if such invalid, illegal or unenforceable provision or part thereof had never been contained herein, but only to the extent of its invalidity, illegality or unenforceability.

19.    <u>Governing Law</u>.    Conflict of law principles notwithstanding, this Settlement Agreement and the rights and obligations of the parties hereto, including the validity, construction, interpretation, effect and enforceability of this Settlement Agreement and the legal consequences thereof, shall be governed by the laws of the State of Maryland and the Bankruptcy Code.

20.    <u>Acknowledgments</u>.    In making this Settlement Agreement, it is understood and agreed that each of the undersigned has relied upon the advice of its own counsel, or alternatively, that all such parties have had the opportunity to consult with counsel, and that this Settlement Agreement is made without reliance upon any statement or representation by any of the undersigned to another that is not contained herein.

21.    <u>Authority</u>.    The undersigned hereby represent that they are duly authorized to execute this Settlement Agreement on behalf of the party for whom he or she purports to act.

22.    <u>Counterparts</u>.    This Settlement Agreement may be executed simultaneously in counterparts, each of which shall be deemed an original, and all of which, when taken together, shall constitute one in the same instrument.  This Settlement Agreement may be executed and

delivered electronically or by facsimile, which electronic or facsimile copy shall be deemed the same as an original.

23.    <u>Successors and Assigns</u>.  This Settlement Agreement shall be binding upon and inure to the benefit of each Settlement Party's successors, assigns, heirs, agents, employees, and representatives, including, without limitation, any trustee, receiver, conservator, or other estate agent or representative appointed in the Bankruptcy Case, pursuant to a chapter 11 plan, or in any subsequent or superseding case (including, without limitation, in any case under chapter 7 of the Bankruptcy Code and any proceeding related hereto or thereto).

24.    <u>Retention of Jurisdiction</u>.  The Court shall retain jurisdiction for the purposes of interpreting, implementing, and enforcing this Settlement Agreement and its terms and conditions.

25.    <u>Headings</u>.  The headings of this Settlement Agreement are for convenience of reference only and shall not form part of, or affect interpretation of, this Settlement Agreement.

26.    <u>Notice</u>.  To be effective, all notices, requests, and demands to or upon the Settlement Parties shall be in writing (including by facsimile or e-mail), addressed as follows:

If to the Debtor:

PJCOMN Acquisition Corporation
1050 Hull Street, Suite 100
Baltimore, Maryland  21230
Attn:   Mr. H. Clifford Harris, IV (charris@iprocessonline.com)

with a copy to:

Logan, Yumkas, Vidmar & Sweeney, LLC
2530 Riva Road, Suite 400
Annapolis, Maryland  21401
Attn:   Lawrence J. Yumkas, Esq. (lyumkas@loganyumkas.com)
          Amy K. Snyder, Esq. (asnyder@loganyumkas.com)

If to Essential Pizza:

        Essential Pizza, Inc.
        1050 Hull Street, Suite 100
        Baltimore, Maryland  21230
        Attn:  Mr. H. Clifford Harris, IV (charris@iprocessonline.com)

If to Harris:

        Mr. H. Clifford Harris, IV
        318 Tschiffely Square Road
        Gaithersburg, Maryland  20878
        E-mail:  charris@iprocessonline.com

If to Mills:

        Mr. Brian Mills
        1676 Amante Court
        Carlsbad, California  92011
        E-mail:  brian_mills@pjcomn.net

If to GECPAC:

        GECPAC Investment I, Inc.
        c/o General Electric Capital Corporation, its servicer
        6464 185th Avenue NE, Suite 100
        Redmond, Washington  98052
        Attn:  Sheila Samples (sheila.samples@ge.com)
                Barbara Habhab, Esq. (barbara.habhab@ge.com)

with a copy to:

        Kutak Rock LLP
        1801 California Street, Suite 3100
        Denver, Colorado  80202
        Attn:  John H. Bernstein, Esq. (john.bernstein@kutakrock.com)
                Adam L. Hirsch, Esq. (adam.hirsch@kutakrock.com)

If to PJI:

        Papa John's International, Inc.
        2002 Papa John's Boulevard
        Louisville, Kentucky  40299
        Attn:  Chris Sternberg, Esq. (chris_sternberg@papajohns.com)
                Senior Vice President and General Counsel

with a copy to:

> Whiteford, Taylor & Preston L.L.P.
> Seven St. Paul Street
> Baltimore, Maryland  21202
> Attn:   Stephen F. Fruin, Esq. (sfruin@wtplaw.com)
>             Dennis J. Shaffer, Esq. (dshaffer@wtplaw.com)

If to the Committee:

> Pachulski Stang Ziehl & Jones LLP
> 919 North Market Street, 17th Floor
> Wilmington, Delaware  19899-8705 (courier 19801)
> Attn:   Bradford J. Sandler, Esq. (bsandler@pszjlaw.com)

If to the CDOR:

> Office of the Colorado Attorney General
> 1525 Sherman Street, 7th Floor
> Denver, Colorado 80203
> Attn:   James B. Holden, Esq. (james.holden@state.co.us)

[Signature Page Follows]

IN WITNESS HEREOF, the Settlement Parties hereby agree to be bound by this

Settlement Agreement as of the date hereof.

PJCOMN ACQUISITION CORPORATION          ESSENTIAL PIZZA, INC.


_____          _____

By:          By:
Title:          Title:

H. CLIFFORD HARRIS, IV          BRIAN MILLS


_____          _____

GECPAC INVESTMENT I, INC.          PAPA JOHN'S INTERNATIONAL, INC., on
                                   behalf of itself and its affiliates and subsidiaries,
By:     General Electric Capital Corporation,    including, but not limited to Capital Delivery, Ltd.,
        as servicer                PJ Food Service, Inc., Papa Card, Inc., Papa John's
                                   National Marketing Fund, Inc., Papa John's USA,
                                   Inc., and Preferred Marketing Solutions, Inc.


        _____          _____

        By:          By:
        Title:          Title:

THE OFFICIAL COMMITTEE OF          THE COLORADO DEPARTMENT OF
UNSECURED CREDITORS          REVENUE


_____          _____

By:          By:
Title:          Title: