IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Baltimore Division)

In re:                                               *

PJCOMN ACQUISITION CORPORATION        *        Case No:  11-29380-RAG
                                                             (Chapter 11)
    Debtor                                       *

    *    *    *    *    *    *    *    *    *    *    *    *

DEBTOR'S AND CREDITORS COMMITTEE'S JOINT MOTION FOR
AUTHORITY TO SELL RIGHTS TO PAYMENTS TO WHICH THE DEBTOR MAY
BE ENTITLED RELATING TO CLASS ACTION INTERCHANGE LITIGATION
FREE AND CLEAR OF ALL LIENS, CLAIMS AND ENCUMBRANCES

PJCOMN Acquisition Corporation, the debtor and debtor in possession (the

"Debtor") and the Official Committee of Unsecured Creditors (the "Committee" or "Seller"),

(together,  "Sellers"), by counsel, file this Joint Motion for Authority to Sell Rights to Payments

to Which the Debtor May be Entitled Relating to Class Action Interchange Litigation Free and

Clear of All Liens, Claims and Encumbrances (the "Motion") pursuant to Sections 363(b), (f)

and (m) of the Bankruptcy Code and Bankruptcy Rules 2002 and 6004, and in support thereof

state as follows:

Background

1.    On October 20, 2005, various retailers and trade associations ("Plaintiffs")

commenced litigation styled In re: Payment Card Interchange Fee and Merchant-Discount

Antitrust Litigation (Case No. 1:05-md-01720-JG-JO) ("Class Action Interchange Litigation") in

the United States District Court for the Eastern District of New York ("Eastern District Court")

against, among other entities, Visa U.S.A. Inc. ("Visa") and Mastercard International, Inc.

("Mastercard" and collectively with all other named defendants in the Class Action Interchange

Litigation, the "Defendants") .  The Plaintiffs claim that, between January 1, 2004 and the

present, the Defendants conspired to unlawfully fix the price of "interchange fees" and other fees

charged to merchants for transactions processed over the Visa and Mastercard networks.  An

interchange fee is a fee that a merchant's bank pays a customer's bank when a merchant accepts cards using card networks such as Visa and MasterCard for purchases.

2.     As of the date hereof, the Plaintiffs have not yet certified a class in the Class Action Interchange Litigation, a trial date has not been announced, and a settlement ("Settlement") has not been finalized.  If the Plaintiffs are successful in certifying a class and either prevail in the Class Action Interchange Litigation or such litigation results in a Settlement ("Settlement Event"), the Debtor may be included in the class and, accordingly, may be entitled to a monetary recovery ("Asset").  At this time, however, it is impossible to predict whether the Plaintiffs will prevail or whether a Settlement Event will occur.[1]

3.     On September 27, 2011, PJCOMN Acquisition Corporation (i.e., the Debtor) filed for bankruptcy relief under Chapter 11 of Title 11 of the United States Code ("Bankruptcy Code") in the United States Bankruptcy Court for the District of Maryland, Baltimore Division ("Bankruptcy Court").

4.     The Debtor continues to manage its property as debtor in possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in the Debtor's case.

5.     On April 19, 2012, the Court entered that certain Order (I) Approving Asset Purchase Agreement and Authorizing Sale of Debtor's Assets Outside Ordinary Course of Business, (II) Authorizing Sale of Assets Free and Clear of Liens, Claims, Encumbrances and Interests, (III) Authorizing Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (IV) Granting Related Relief [Docket No. 406] (the "April 19th Sale Order").  Pursuant to the April 19th Sale Order, the Debtor, among other things, "transferre[d] to the Committee any causes of action in which the Debtor may assert rights as a class action plaintiff in any lawsuit or potential lawsuit that may exist now or in the future[.]"

---

[1]     There is a proposed settlement of the Class Action Interchange Litigation, which has been preliminarily approved by the Eastern District Court.  Such preliminary approval, however, does not constitute approval. Moreover, the settlement faces opposition from several significant groups and parties, including:  the National Retail Federation; the National Growers Association; the National Community of Pharmacists Association; the National Association of Convenience Stores; Target; and Wal-Mart.

<u>Jurisdiction</u>

6.     This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

<u>Relief Requested</u>

7.     By this motion (the "Motion"), pursuant to § 363 of the Bankruptcy Code and Rules 2002 and 6004 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules"), the Debtor and the Committee seek authorization to sell to the Purchaser (defined below) the rights to any payments the Debtor may recover as a result of its potential involvement as a putative class member in the Class Action Interchange Litigation (or any subsequently filed amended complaints), free and clear of all liens, claims and encumbrances thereon.  The Committee joins as a party to the Motion, and, pursuant to the April 19th Sale Order, the proceeds resulting from this sale shall be used to pay the claims of unsecured creditors.

<u>The Class Action Interchange Litigation</u>

**A.     The Proposed Sale of the Debtor's Right to the Payments.**

8.     In order to bring additional assets into the estate, the Seller proposes to sell its contingent rights to the Asset to Cascade Settlement Services LLC ("Purchaser" or "Cascade").  The Seller negotiated the Asset Purchase and Sale Agreement ("Sale Agreement"), a copy of which is **Exhibit 1** hereto, with the Purchaser.

9.     The Sale Agreement provides for the sale of the Asset by the Seller to the Purchaser for a purchase price of $25,000 ("Purchase Price").  Having failed to receive any other offers for the Asset and given Cascade's assumption of certain risks, including:  (a) the risk that the Plaintiffs fail to certify a class in the Class Action Interchange Litigation; (b) the risk that a Settlement Event does not occur; (c) the risk that the Class Action Interchange Litigation is dismissed; (d) the risk that the Defendants prevail; (e) the risk that the size of any potential settlement fund is unknowable prior to the Settlement Event; and (f) the risk that the ultimate

payment of any awards could occur many years into the future, the Seller negotiated the Sale Agreement with the Purchaser.

        10.     Subject to this Court's approval of the Sale Agreement, the sale of the Asset to the Purchaser will be free and clear of any and all claims, liens, encumbrances, judgments and security interests.  The salient terms of the Sale Agreement are summarized below:[2]

    (a)    <u>Sale and Purchase of Asset</u>.  Purchaser agrees to purchase all right, title and interest in the Asset from the Seller, and the Seller agrees to sell, transfer and assign all right, title and interest in the Asset to Purchaser (Sale Agreement § 2.1).

    (b)    <u>Payment of Purchase Price</u>.  In consideration for the sale of the Asset by the Seller to Purchaser, Purchaser will wire transfer the Purchase Price using wire instructions to be provided by the Committee, within 15 business days of the later of (i) full execution of the Sale Agreement and (ii) approval of the Sale by the Bankruptcy Court (Sale Agreement §§ 2.1 and 2.2).

    (c)    <u>Notice of Assignment</u>.  In addition to the Sale Agreement, the Parties will execute a Notice of Assignment, a copy of which is **Exhibit 2** hereto (Sale Agreement §2.2(c)).

    (d)    <u>No Assumption of Obligations or Liabilities</u>.  Upon the execution of the Sale Agreement, Purchaser shall assume all obligations and liabilities relating to the Asset but shall not assume or in any way become liable for any obligation or liability of the Seller independent of the Asset (Sale Agreement §2.5).

    (e)    <u>Title to Asset; No Liens</u>.  The Seller represents and warrants that it has good, valid and marketable title to the Asset and the Asset is free and clear of any mortgage, pledge, lien, security interest, claim or encumbrance.  The Seller has not transferred the Asset or any interest therein except to Purchaser under the Sale Agreement (Sale Agreement §3.5).

    (f)    <u>No Fiduciary or Confidential Relationship</u>.  The Seller acknowledges that the Seller and Purchaser are not in a

---

[2]  The following represents only a summary of the salient provisions of the Sale Agreement; the Sale Agreement itself should be referred to in its entirety for the specific terms and conditions thereof.  If there is any inconsistency between the following summary and the Sale Agreement, the terms and conditions of the Sale Agreement will control.  Capitalized terms used, but not defined in the following summary, have the meaning ascribed to such terms in the Sale Agreement.

fiduciary, confidential, agency or otherwise special relationship, including one of trust, confidence or privity, and that the Seller and Purchaser are each acting for their own self-interest and Purchaser acknowledges same (Sale Agreement §§3.12 & 4.12).

(g)    <u>Waiver of Claims</u>.  The Seller and Debtor covenant that, to the maximum extent permitted by law, they will not assert and will waive any and all claims against Purchaser or any of its members, officers, directors, employees, agents or affiliates with respect to the Sale Agreement, any ancillary agreement or the transactions contemplated in the Sale Agreement or thereby based on any claim that Purchaser had superior or additional information material to a decision to sell or buy the Asset (Sale Agreement §5.2).

**B.    Sale of the Asset Pursuant to the Terms of the Sale Agreement Is an Appropriate Exercise of Sound Business Judgment and Should Be Approved.**

11.    Section 363(b)(1) of the Bankruptcy Code governs the sale of assets of a debtor outside the ordinary course of business.  Specifically, that section provides, in relevant part, that "[t]he trustee, after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate."  In determining whether to authorize the sale of property outside the ordinary course of business, courts require a debtor "to show that a sound business purpose justifies such actions."  *Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.)*, 242 B.R. 147, 153 (D. Del. 1999).  *See also In re Del. & Hudson Ry. Co.*, 124 B.R. 169, 178 (D. Del. 1991) (affirming decision permitting debtor to sell assets where sound business reasons supported the sale).  When a sound business purpose exists, and the sale is made in good faith, a sale pursuant to § 363(b)(1) of the Bankruptcy Code should be approved.  *See In re Abbotts Dairies of Pa., Inc.*, 788 F.2d 143, 150-51 (3d Cir. 1986) (noting that when a court authorizes a sale of assets pursuant to § 363(b)(1), it is required to consider the "good faith" of the purchaser).

12.    In the instant case, the Seller submits that sound business justification exists which merits judicial approval of the proposed sale.  The Purchase Price is reasonable and, to the best of the Seller's knowledge, there is no other potential buyer willing to pay more for this contingent asset.  Indeed, a trial has not been commenced in the Class Action Interchange

Litigation and a class has yet to be certified. It may be years before the Seller would recover anything, assuming a class is certified in the Class Action Interchange Litigation, the Debtor is a member of the class, and the class is successful in obtaining a recovery. Therefore, the benefit of receiving immediate payments for a contingent asset that may not otherwise result in a recovery for several years is clear. The sale will allow the Seller to immediately realize additional funds for the benefit of unsecured creditors, thereby increasing the pool of assets available for creditor distribution. Thus, it is the Seller's sound business judgment that the value to be realized by the Debtor's estate through the sale of the Asset, and the fact that the proposed sale is the end result of good-faith negotiations between the Seller and the Purchaser, the proposed sale of the Asset to the Purchaser is in the best interest of the Seller, the Debtor's estate and its creditors.

### C.       An Auction of the Contingent Asset Is Not Required.

13.       In accordance with Bankruptcy Rule 6004(f)(1), asset sales outside of the ordinary course of business may be by private or public sale. Fed. R. Bankr. P. 6004(f)(1). A debtor has broad discretion in determining the manner in which its assets are sold. *Berg v. Scanlon (In re Alisa P'ship)*, 15 B.R. 802, 802 (Bankr. D. Del. 1981) ("[T]he manner of [a] sale is within the discretion of the trustee . . ."); *In re Bakalis*, 220 B.R. 525, 531 (Bankr. E.D. N.Y. 1998) (noting that a trustee has "ample discretion to administer the estate, including authority to conduct public or private sales of estate property.") (internal quotations and citations omitted). As long as a debtor maximizes the return to its estate, a court should defer to a debtor's business judgment of how to conduct a sale of its assets. *Id.* at 532 (recognizing that although a trustee's business judgment enjoys great judicial deference, a duty is imposed on the trustee to maximize the value obtained from a sale); *In re Nepsco, Inc.*, 36 B.R. 25, 26 (Bankr. D. Me. 1983) ("Clearly, the thrust of th[e] statutory scheme [governing 363 sales] is to provide maximum flexibility to the trustee, subject to the oversight of those for whose benefit he acts, i.e., the creditors of the estate."). Accordingly, if a debtor concludes that conducting a private sale, as opposed to a public auction, is in the best interest of the estate, the debtor should be permitted to do so. *Penn Mut. Life Ins. Co. v. Woodscape Ltd. P'ship (In re Woodscape Ltd. P'ship),* 134

B.R. 165, 174 (Bankr. D. Md. 1991) (noting that, with respect sales of estate property, "[t]here is no prohibition against a private sale . . . and there is no requirement that the sale be by public auction.").

14.     The Seller submits that a private sale of its rights to the Asset is appropriate.  The Seller does not believe that there are any other parties that would offer funds for this Asset.  The delay and costs associated with marketing the Asset would likely negate any benefit to be derived through a public sale of the Asset.  Accordingly, the Seller submits that a private sale of the Asset is in the best interest of the Debtor's estate and should be approved.

### D.     Sale of the Asset Free and Clear of Liens, Claims and Encumbrances Is Appropriate.

15.     The Seller further submits that it is appropriate that the rights to the Asset be sold free and clear of liens, claims and encumbrances pursuant to § 363(f) of the Bankruptcy Code, with any such liens, claims, encumbrances, or interests to attach to the sale proceeds thereof.  Section 363(f) of the Bankruptcy Code provides:

> The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if—
>
> (1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;
>
> (2) such entity consents;
>
> (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
>
> (4) such interest is in bona fide dispute; or
>
> (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

16.     To facilitate the sale of the Asset, the Seller seeks authorization to sell such rights free and clear of any and all liens, claims and encumbrances, with such liens, claims and encumbrances to attach to the net proceeds of such sale with the same rights and priorities

therein.  Because § 363(f) is stated in the disjunctive, when selling property of the estate it is
only necessary to meet one of the five conditions of that section.  11 U.S.C. § 363(f).  *See*
*Citicorp Homeowners Servs., Inc. v. Elliot (In re Elliot)*, 94 B.R. 343, 345 (E.D. Pa. 1988)
("[Section 363(f)] is written in the disjunctive, not the conjunctive.  Therefore, if any of the five
conditions of § 363(f) are met, the trustee has the authority to conduct the sale free and clear of
all liens.").

17.     As of the date hereof, the Seller is not aware of any liens or interests held
by any party in respect of the Asset (other than the transfer to the Committee pursuant to the
terms of the Sale Order – who fully supports the sale).  The Seller submits that the Court should
authorize the sale of the Asset free and clear of any and all liens, claims and encumbrances, with
any of the same to be transferred and attached to the net proceeds of the sale, with the same
validity and priority that such liens, claims and encumbrances had against the rights to the Asset.
Thus, the sale of the Asset free and clear of liens, claims and encumbrances will satisfy the
statutory prerequisites of § 363(f) of the Bankruptcy Code.

<u>Good Faith Purchaser</u>

18.     Section 363(m) of the Bankruptcy Code protects the sale of a debtor's
property to a good faith purchaser.  Section 363(m) provides,

> The reversal or modification on appeal of an authorization under
> subsection (b) or (c) of this section of a sale or lease of property
> does not affect the validity of a sale or lease under such
> authorization to an entity that purchased or leased such property in
> good faith, whether or not such entity knew of the pendency of the
> appeal, unless such authorization and such sale or lease were
> stayed pending appeal.

11 U.S.C. § 363(m).

19.     Although the Bankruptcy Code does not define "good faith purchaser," the
United States Court of Appeals for the Third Circuit ("Third Circuit") has noted that the phrase
"encompasses one who purchases in 'good faith' and 'for value.'"  *In re Abbotts Dairies of Pa.,*
*Inc.*, 788 F.2d at 147.  Further, the Third Circuit has recognized that the type of misconduct that
would destroy a purchaser's good faith status involves "'fraud, collusion between the purchaser

and other bidders or the Debtor, or an attempt to take grossly unfair advantage of other bidders.'" *Id.* (citing *In re Rock Indus. Mach. Corp.*, 572 F.2d 1195, 1198 (7th Cir. 1978)).  The terms and conditions of the sale of the Asset to the Purchaser were negotiated by the Seller at arms'-length and in good faith.  Accordingly, the Seller requests the Court determine the Purchaser to be acting in good faith and entitled to the protections afforded to good faith purchasers under § 363(m) of the Bankruptcy Code.

20.    To successfully implement the Sale Agreement, the Seller seeks a waiver of the fourteen-day stay under Bankruptcy Rule 6004(h).

<u>No Previous Request</u>

21.    No previous request for the relief sought herein has been made by the Debtor to this or any other court.

WHEREFORE, the Debtor and the Committee jointly request entry of an order authorizing them to enter into the Sale Agreement and to take all acts necessary to consummate the sale described therein free and clear of all liens, claims and encumbrances, and granting such other and further relief as the court deems just and appropriate.


_____/s/ Lawrence J. Yumkas_____             _____/s/ Bradford Sandler_____
Lawrence J. Yumkas, 06357                                   Bradford Sandler
Yumkas, Vidmar & Sweeney, LLC                        Pachulski Stang Ziehl & Jones LLP
2530 Riva Road, Suite 400                                    919 North Market Street, 17th Floor
Annapolis, Maryland  21401                                  Wilmington, Delaware  19801
(443) 569-0758                                                      (302) 652-4100
lyumkas@yvslaw.com                                           bsandler@pszjlaw.com

Counsel for Debtor                                                Counsel for Official Committee of Unsecured
                                                                             Creditors

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 10th day of December 2012, notice of filing of the Debtor's and Creditors Committee's Joint Motion for Authority to Sell Rights to Payments to Which the Debtor May be Entitled Relating to Class Action Interchange Litigation Free and Clear of All Liens, Claims and Encumbrances (the "Motion") was sent electronically to those parties listed on the docket as being entitled to such electronic notices, and a copy of the Motion was mailed first class, postage prepaid to the parties on the attached service list.

/s/ Lawrence J. Yumkas
Lawrence J. Yumkas

John H. Bernstein, Esquire
Adam L. Hirsch, Esquire
Kutak Rock LLP
1801 California Street, Suite 3100
Denver, Colorado 80202-2658

Jennifer M. Blunt, Esquire
Craig B. Young, Esquire
Kutak Rock LLP
1101 Connecticut Avenue NW Ste 1000
Washington, D.C. 20036-4374

Deborah H. Devan, Esquire
Neuberger, Quinn, Gielen, Rubin &
Gibber
One South Street, 27th Floor
Baltimore, Maryland 21202-3282

Scott W. Foley, Esquire
Shapiro Sher Guinot & Sandler
36 South Charles Street, 20th Floor
Baltimore, Maryland 21201-3147

Edmund A. Goldberg, Esquire
Office of the U.S. Trustee
101 West Lombard Street, Suite 2650
Baltimore, Maryland 21201

Alan M. Grochal, Esquire
Catherine Keller Hopkin, Esquire
Tydings & Rosenberg, LLP
100 East Pratt Street, 26th Floor
Baltimore, Maryland 21202

Keith R. Havens, Esquire
Havens and Associates
2401 Research Boulevard, Suite 308
Rockville, Maryland 20850

Matthew C. Helland, Esquire
Nichols Kaster, LLP
One Embarcadero Center, Suite 720
San Francisco, California 94111

James B. Holden, Esquire
Office of the Colorado Attorney General
1525 Sherman Street, 7th Floor
Denver, Colorado 80203

Steven N. Leitess, Esquire
Leitess, Leitess Friedberg & Fedder PC
10451 Mill Run Circle, Suite 1000
Owings Mills, Maryland 21117

Richard James Mitchell, Esquire
K&L Gates LLP
1601 K Street, N.W.
Washington, D.C. 20006

Jeffrey Pomerantz, Esquire
Pachulski Stang Ziehl & Jones, LLP
10100 Santa Monica Boulevard
11th Floor
Los Angeles, California 90067-4100

Andrew D. Ringel, Esquire
Hall & Evans, L.L.C.
1125 Seventeenth Street, Suite 600
Denver, Colorado 80202

Bradford J. Sandler, Esquire
Curtis A. Hehn, Esquire
Leslie C. Heilman, Esquire
Pachulski Stang Ziehl & Jones, LLP
919 North Market Street, 17th Floor
Wilmington, Delaware 19801

Steven M. Sakamoto-Wengel, Esquire
Consumer Protection Division
Office of the Attorney General
200 St. Paul Place, Sixteenth Floor
Baltimore, Maryland 21202

Gilbert R Saydah, Esquire
Kelley Drye & Warren LLP
101 Park Avenue
New York, New York 10930

Dennis J. Shaffer, Esquire
Whiteford Taylor Preston, LLP
7 Saint Paul Street
Baltimore, Maryland 21202

Matthew G. Summers, Esquire
Timothy F. McCormack, Esquire
Michelle McGeogh, Esquire
Ballard Spahr LLP
300 East Lombard Street, 18th Floor
Baltimore, Maryland 21202

John Randolph Torbet, Esquire
Torbet & Tuft, LLC
2 North Cascade Avenue, Suite 320
Colorado Springs, Colorado 80903

Artoush Varshosaz, Esquire
K&L Gates LLP
1717 Main Street, Suite 2800
Dallas, Texas 75201

38th & Sheridan, LTD
c/o Robert E. Perry, Managing Member
Perry-Bailey, LLC
6500 South Quebec Street, Suite 300
Englewood, Colorado 80111

Buell Property Management Company
50 South Steele Street, Suite 1000
Denver, Colorado 80209

Capital Insight, LLC
c/o Gregory G. Landry, Managing
Director
16220 North Scottsdale Road, suite 275
Scottsdale, Arizona 85254

Cleo Constantin
6132 Franciscan Court
San Jose, California 95120

Crossings at Maple Grove, LLC
c/o Steven G. Potach, Esquire
1110 TCF Tower
121 South Eighth Street
Minneapolis, Minnesota 55402

Fisher Bren & Sheridan LLP
c/o Gerald H. Bren, Esquire
920 Second Avenue South, Suite 975
Minneapolis, Minnesota 55402

M & J Investments of MN, Inc.
c/o Cheryl B. Goldberg
4527 Haines Road, #A
Hermantown, Minnesota 55811-3955

Nicole C. Pine
721 Brookside Drive
Longmont, Colorado 80504

Quebec Square SPE, LLC
c/o Caroline C. Fuller, Esquire
Fairfield and Woods, P.C.
1700 Lincoln Street, Suite 2400
Denver, Colorado 80203-4524

Sun Life Assurance Company of
Canada
c/o Jo E. Hartwick, Esquire
Stutzman Bromberg Esserman & Plifka
2323 Bryan Street, Suite 2200
Dallas, Texas 75201

Teachers Insurance & Annuity
Association of America
c/o David A. Libra, Esquire
120 South Sixth Street, Suite 2500
Minneapolis, Minnesota 55402

Triple One Investments LLC
c/o Kenneth J. Buechler, Esquire
Buechler Law Office, L.L.C.
1828 Clarkson Street, Suite 200
Denver, Colorado 80218

Cascade Settlement Services
Attention:  John Chilcott
100 Shoreline Highway, Suite B-125
Mill Valley, California   94941